UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORIENT SPIRIT NAVIGATION LIMITED,<br><br>                    Plaintiff,<br><br>          v.<br><br>ANL CONTAINER LINE PTY LIMITED, et al.,<br><br>                    Defendants. | Case No. CV 14-572 PA(JCx)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE<br><br>[DOCKET NO. 18] |

       This Report and Recommendation is submitted to the Honorable
Percy Anderson, United States District Judge, pursuant to 28 U.S.C. § 636 and
General Order 05-07 of the United States District Court for the Central District of
California.

## I.    SUMMARY

       On January 24, 2014, plaintiff Orient Spirit Navigation Limited ("Plaintiff"),
filed a Verified Complaint ("Original Complaint" or "OC"), asserting an admiralty
and maritime claim against ANL Container Line Pty Limited ("ANL Container").
Plaintiff concurrently filed, *inter alia*, an ex parte motion seeking the attachment of
fuel bunkers assertedly belonging to ANL Container which were then on board the
vessel M/V Winter D.  On the same date, the Court granted the ex parte motion

and issued the attachment order and process.  The United States Marshal executed such process and the fuel bunkers in issue were seized on January 25, 2014, and released subject to a letter of undertaking/substitute security on January 31, 2014.

On February 12, 2014, specially appearing party ANL Singapore PTE Ltd. ("ANL Singapore" or "Moving Party") – which claims that the attached bunkers belong to ANL Singapore and not to ANL Container – filed a Motion to Vacate Attachment and for Costs and Security for Costs ("Motion to Vacate") with supporting documents.[1]  On February 19, 2014, plaintiff filed an opposition to the Motion to Vacate ("Opposition") with supporting documents[2] and an Amended Verified Complaint ("First Amended Complaint" or "FAC") which names both ANL Container and ANL Singapore as defendants and alleges that ANL Container is the alter ego of ANL Singapore.  On February 25, 2014, ANL Singapore filed a

///
///
///
///
///

_____

[1]ANL Singapore concurrently filed a Declaration of Yeo Hock Yong ("Yong Decl.") with exhibits ("Yong Ex."), a Declaration of Michael Fischer ("Fischer Decl.") with exhibits ("Fischer Ex.") and a Declaration of Neil Klein ("Klein Decl.") with exhibits ("Klein Ex.").  (Docket Nos. 19-21).  Although the Motion to Vacate characterizes the attachment as "wrongful," the Moving Party's counsel clarified in the Moving Party's reply brief and at the hearing that the Moving Party is not currently asking the Court to determine that the attachment was "wrongful," or to assess whether plaintiff acted in bad faith.  At the hearing, the Moving Party's counsel also withdrew at this juncture the portion of the Motion to Vacate which seeks an order requiring Plaintiff to post a $500,000 security and to pay ANL Singapore's costs, except that the Moving Party continues to seek the costs incurred in connection with the filing of the Motion to Vacate.

[2]Plaintiff concurrently submitted a Declaration of Andre M. Picciurro ("Picciurro Decl.") with exhibits ("Picciurro Ex."), a Declaration of Panos Zafet ("Zafet Decl.") with exhibits ("Zafet Ex.") and an unopposed Request for Judicial Notice, asking that the Court take judicial notice of Picciurro Exs. 10-16.  (Docket No. 23-1 through 23-7).  This Court granted the unopposed Request for Judicial Notice at the hearing on the Motion to Vacate.

1  Reply ("Reply") with a supporting document[3] and Objections to a declaration
2  submitted in support of the Opposition ("Objections").[4]
3      On March 3, 2014, the Court held a hearing on the Motion to Vacate.[5]
4  Andre M. Picciurro and Bradley M. Rose appeared on behalf of Plaintiff.  Neil B.
5  Klein and Maria del Rocio Ashby specially appeared on behalf of ANL Singapore.[6]
6  No appearance was made on behalf of ANL Container.[7]  At the conclusion of the
7  hearing, the Court submitted the matter for decision.
8  ///

9

10      [3]ANL Singapore concurrently submitted a Supplemental Declaration of Yeo Hock Yong
11  ("Yong Supp. Decl.").  (Docket No. 26-1).

12      [4]The Moving Party objected to portions of paragraphs 2 and 10 of the Picciurro
13  Declaration.  At the hearing, this Court essentially overruled the Objections to the pertinent
    portion of paragraph 2 as moot (given plaintiff's counsel's indication that such portion had been
14  offered solely to address the Moving Party's contention that the attachment had been "wrongful"
    – something which was no longer in issue for purposes of the Motion to Vacate, see supra note
15  1), sustained the Moving Party's Objection to the pertinent portion of paragraph 10 as
16  argumentative, and overruled the remaining Objections to paragraph 10 as moot, but noted that
    the Court would consider the underlying fact referenced therein – that the Winter D did not call
17  at the STX Korea as reflected on the Winter D Charterparty – as such fact was not disputed and
18  was established by other evidence to which the Moving Party did not object.

19      [5]Subsequent to the hearing on the Motion to Vacate, ANL Singapore filed a Notice of
    Errata and Supplemental Evidentiary Objections with a supporting declaration.  (Docket Nos. 32,
20  33).  Plaintiff then filed a response to the Supplemental Evidentiary Objections and objections to
21  the supporting declaration.  (Docket Nos. 36, 37).  As the Notice of Errata provides a case
    citation missing from the Reply as to which the Court inquired at the hearing, the Court will
22  consider such document.  However, the Court declines to consider ANL Singapore's untimely
23  Supplemental Evidentiary Objections and supporting declaration and accordingly, likewise does
    not consider Plaintiff's response/objections thereto.

24      [6]Pursuant to Rule E(8) of the Supplemental Rules for Admiralty or Maritime Claims and
25  Asset Forfeiture Actions, an appearance to defend against an admiralty or maritime claim with
    respect to which there has issued process of attachment and garnishment, may be expressly
26  restricted to the defense of such claim, and in that event, is not an appearance for the purposes of
27  any other claim with respect to which such process is not available or has not been served.

28      [7]ANL Singapore's counsel also represents ANL Container.  (Klein Ex. B).

3

Based on the submissions and arguments of Plaintiff and the Moving Party, and on the pertinent law, this Court recommends that the Motion to Vacate be granted to the extent it seeks an order vacating the attachment, that it otherwise be denied, and that Plaintiff's related requests for discovery and a stay be denied.[8]

## II.   PERTINENT LAW

The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules" or "Supp. Rule") govern the procedures in admiralty and maritime claims with respect to, among other things, maritime attachment and garnishment. Supp. Rule A(1). Supplemental Rule B ("Rule B" or "Supp. Rule B") governs attachment and garnishment in *in personam* admiralty/ maritime actions. Under Rule B, a plaintiff may attach a defendant's property if four conditions are met: (1) the plaintiff has a valid prima facie admiralty claim against the defendant;[9] (2) the defendant cannot be found within the district;[10] (3) property of the defendant can be found within the district;[11] and (4) there is no

[8]This Court proceeds by way of a Report and Recommendation because the Motion to Vacate is effectively a dispositive motion within the meaning of Rule 72(b) of the Federal Rules of Civil Procedure, in that an order to vacate the attachment would effectively deprive the Court of jurisdiction. See Kite Shipping LLC v. San Juan Navigation Corp., 2012 WL 4049936, *4 (S.D. Cal. Sept. 13, 2012).

[9]Pursuant to Supplemental Rule E(2)(a), the complaint must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."

[10]Pursuant to Local Admiralty Rule B.2, a defendant "cannot found within the district" if, in an *in personam* action, the defendant cannot be served with the summons and complaint as provided in Fed. R. Civ. P. 4(e)(2) or 4(h)(1).

[11]"[T]he property must be located within the district and the property must belong to the defendant." Limonium Maritime, S.A. v. Mizushima Mariner, S.A., 961 F. Supp. 600, 606 (S.D.N.Y. 1997) (emphasis and citations omitted); see also Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte. Ltd., 585 F.3d 58, 69 (2nd Cir. 2009) (validity of Rule B attachment depends
(continued...)

4

1   statutory or maritime law bar to the attachment.  Equatorial Marine Fuel

2   Management Service Pte, Ltd. v. MISC Berhard ("Equatorial Marine"), 591 F.3d

3   1208, 1210 (9th Cir. 2010) (citations omitted); Supp. Rule B.[12]

4        Whenever property is arrested or attached, any person claiming an interest in

5   it may contest the attachment and is entitled to a prompt hearing.  Supp. Rule

6   E(4)(f).[13]  Such interested party can attack the complaint, the arrest, the security

7   demanded, or any other alleged deficiency in the proceedings.  Equatorial Marine,

8   _____

9        [11](...continued)

10  entirely on determination that the *res* at issue is the property of the defendant at the moment the
    *res* is attached; if the *res* is not property of defendant, then court lacks jurisdiction), cert. denied,

11  559 U.S. 1030 (2010); T&O Shipping Ltd. v. Source Link Co., Ltd.., 2006 WL 3513538, *4
    (S.D.N.Y. Dec. 5, 2006) (property of party who is not named defendant may not be attached;

12  rejecting defendant's "bare assertion" that funds of non-defendant claimant belonged to
    defendant); DS Bulk Pte., Ltd. v. Calder Seacarrier Corp., 2006 WL 1643110, *2 (S.D.N.Y. June

13  13, 2006) (same).  However, under Rule B it is possible for more than one party to have an
    attachable interest in the same property.  Essar International Ltd. v. Martrade Gulf Logistics,

14  FZCO, 2007 WL 2456629, *3 (S.D.N.Y. Aug. 23, 2007) (named defendant had attachable
    property interest in electronic funds transferred by non-defendant claimant where evidence

15  established that funds constituted payment to third party for defendant's benefit; distinguishing
    T&O Shipping Ltd. and DS Bulk Pte., Ltd. because such cases involved only "bare assertion[s]"

16  of defendant's property interest in electronic funds transferred by non-defendant claimant); see
    also Scotline Inc. v. Japonica Enterprises Co., 2009 WL 2366474, *1 (S.D.N.Y. Aug. 3, 2009)

17  (vacating attachment of funds of non-defendant claimant where plaintiff presented essentially
    only bare assertions that property in fact belonged to defendant; distinguishing Essar

18  International Ltd. on facts).

19

20

21       [12]More specifically a plaintiff must file (1) a verified complaint praying for attachment of
    a defendant's tangible or intangible personal property, up to the amount sued for; and (2) an

22  affidavit signed by the plaintiff or the plaintiff's attorney stating that, to the affiant's knowledge,
    or on information and belief, the defendant cannot be found within the district.  Supp. Rule

23  B(1)(a)-(b).  Pursuant to Local Admiralty Rule B.2, such affidavit must also list the efforts made
    by and on behalf of plaintiff to find and serve the defendant within the district.

24

25       [13]Although at least one court has suggested otherwise (see Linea Navira De Cabotaje,
    C.A. v. Mar Caribe de Navegacion, C.A., 1999 WL 33218589, *1 n.9 (M.D. Fla. Nov. 17,

26  1999)), this Court presumes that the Federal Rules of Evidence apply at such a hearing.  See Fed.
    R. Evid. 1101(b) ("These rules apply in: civil cases and proceedings, including . . . admiralty and

27  maritime cases[.]").  The parties do not appear to dispute that the Federal Rules of Evidence
    apply here and indeed, have invoked such rules in their objections.

28

591 F.3d at 1210 (citation omitted).  The plaintiff has the burden of justifying a continued attachment, but the plaintiff need not otherwise "prove its case."  Id. at 1210, 1211 (citations omitted).  Although the Ninth Circuit has not defined the test by which a plaintiff may satisfy the burden of justification, district courts within the Ninth Circuit have found that a plaintiff must show probable cause, i.e., reasonable grounds to support the attachment.  See Tefida v. 1,925 Cartons of Crab, 2013 WL 4049011, *3 (W.D. Wash. Aug. 9, 2013) (at post-attachment hearing probable cause standard roughly equates to whether plaintiff can make out prima facie case; court need only determine whether reasonable grounds exist for attachment/arrest); Kite Shipping LLC v. San Juan Navigation Corp., 2012 WL 4049936, *4 (S.D. Cal. Sept. 13, 2012) (at post-attachment hearing plaintiff only needs to show probable cause for warrant/writ, i.e., that plaintiff reasonably likely to prevail on merits); OS Shipping Co. Ltd. v. Global Maritime Trust(s) Private Ltd., 2011 WL 1750449, *5 (D. Or. May 6, 2011) (prevailing test appears to be a probable cause standard that requires plaintiffs to demonstrate evidence shows a fair or reasonable probability that plaintiffs will prevail).

At post-attachment hearings, courts generally may consider allegations and evidence that were not before them at the time of the original attachments, but courts differ in (i) how they treat agency and alter ego allegations where such theories of liability are not asserted in the underlying complaint; and (ii) how they treat amended complaints/proposed amended complaints.  See Cockett Marine Oil Limited v. M/V Lion, 2011 WL 1833286, *2, *5 & nn. 2-3 (E.D. La. May 12, 2011) (despite reciting proposition that in considering propriety of Rule B attachment, court's inquiry limited to assessment of underlying complaint, court itself considered allegations of post-attachment amended complaint);[14] Equatorial

---

[14]The Moving Party's Notice of Errata reflects that Cockett Marine Oil is the source of the block quotation on page 3 of its Reply.

1   Marine, 591 F.3d at 1210-11 (considering, at post-attachment hearing, evidence

2   beyond that attached to complaint in assessing whether plaintiff had valid prima

3   facie breach of contract claim against defendant, but declining to consider

4   plaintiff's assertion that actual contracting entity was agent of defendant because

5   plaintiff failed to allege agency relationship in complaint which it never sought to

6   amend); Hawknet Ltd. v. Overseas Shipping Agencies, 2008 WL 1944817, *2-*3

7   & n.7 (S.D.N.Y. Apr. 29, 2008) (considering at post-attachment hearing allegations

8   and evidence beyond that in underlying complaint, including allegations in

9   proposed amended verified complaint that non-defendant claimant was alter ego of

10  defendant; finding that plaintiff had made prima facie showing of alter ego,

11  vacating attachment because claimant not named as defendant in underlying

12  complaint, but staying release of funds pending filing of amended complaint

13  naming claimant as defendant and issuance/expeditious service of new attachment

14  order); Maersk, Inc. v. Neewra, Inc., 443 F. Supp. 2d 519, 527 (S.D.N.Y. Aug. 1,

15  2006) (in determining whether reasonable grounds for attachment exist, court may

16  consider any allegations or evidence offered in the parties' papers or at the post-

17  attachment hearing; analysis of whether reasonable grounds exist for attachment

18  not limited to allegations in complaint); T&O Shipping Ltd. v. Source Link Co.,

19  Ltd.., 2006 WL 3513638, *4 (S.D.N.Y. Dec. 5, 2006) (vacating attachment of

20  funds of non-defendant claimant where named defendant did not have attachable

21  interest in funds and where plaintiff's assertion that claimant was alter ego of

22  defendant, even if true, would not justify attachment of claimant's funds because

23  claimant was not named as defendant in underlying complaint; granting plaintiff's

24  motion to amend to name claimant as defendant based on alter ego theory, but

25  denying plaintiff's motion to retroactively amend attachment to effectively hold

26  claimant's funds because of due process concerns and because plaintiff effectively

27  usurped judicial process by instructing bank to restrain the funds which plaintiff

28  knew were in claimant's name and where plaintiff was already well aware of the

alleged alter ego relationship between claimant and defendant before it filed the underlying complaint); Essar International Ltd. v. Martrade Gulf Logistics, FZCO, 2007 WL 2456629, *3 (S.D.N.Y. Aug. 23, 2007) (plaintiff need not aver alter ego relationship in underlying complaint for Rule B attachment of funds in name of non-defendant to be proper where evidence was presented to demonstrate that named defendant had property interest in funds and where evidence went beyond a bare assertion that named defendant had such a property interest); Linea Navira De Cabotaje, C.A. v. Mar Caribe de Navegacion, C.A., 1999 WL 33218589, *2-*3 (M.D. Fla. Nov. 17, 1999) (denying motion to vacate attachment of bank accounts held by non-defendant claimants where underlying complaint contained bare allegation that defendant made payments to plaintiff from such accounts, but evidence presented at post-attachment hearing showed that defendant exercised dominion and control over accounts and that defendant and non-defendant claimants may act as a common enterprise).

From the foregoing authorities, the Court concludes that in resolving a motion to vacate (i) it may consider allegations and evidence that were not before it at the time of an original attachment, including agency/alter ego allegations asserted for the first time in a post-attachment amended verified complaint; (ii) notwithstanding the foregoing, it must vacate an attachment if it determines that there is not probable cause that the attached property belongs to a defendant named in the underlying complaint and attachment order, independent of an alter ego/agency theory; and (iii) it may, in appropriate circumstances, stay the order vacating attachment pending further proceedings relative to an agency/alter ego theory.

With respect to the alter ego issue, "[f]ederal courts sitting in admiralty generally apply federal common law." Chan v. Society Expeditions, Inc., 123 F.3d 1287, 1294 (9th Cir. 1997), cert. dismissed, 522 U.S. 1100 (1998).  As a general rule, a parent corporation and its subsidiary are separate entities.  Harris Rutsky &

Co. Insurances Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1134 (9th Cir. 2003); see also United States v. Bennett, 621 F.3d 1131, 1136-37 (9th Cir. 2010) (parent corporation does not own the assets of its wholly-owned subsidiary by virtue of that relationship alone), appeal after remand, 519 Fed. Appx. 419 (9th Cir.), cert. denied, 134 S. Ct. 540 (2013).  Common ownership is not sufficient to pierce the veil between corporations, and bare assertions of alter ego status do not warrant attachment.  Stevedoring Services of America v. Ancora Transport, N.V., 59 F.3d 879, 883 (9th Cir. 1995) (district court properly determined that it did not have jurisdiction over funds under Rule B because defendant charterer did not own the funds and defendant owner of funds was liable neither on the face of the contract between plaintiff and defendant charterer nor as defendant charterer's alter ego; plaintiff's little more than bare assertions that defendant owner was an alter ego of defendant charterer insufficient).

To satisfy the alter ego exception to the foregoing general rule, a plaintiff must make out a prima facie case that (1) there is such a unity of interest and ownership that the separate personalities of the two entities no longer exist; and (2) failure to disregard their separate identities would result in fraud or injustice. Harris Rutsky & Co. Insurances Services, Inc., 328 F.3d at 1134 (citations and internal brackets and quotations omitted).  The plaintiff must show that the parent exercises such control over the subsidiary so as to render the latter the mere instrumentality of the former.  Id. (citation and quotations omitted).  The Ninth Circuit, applying California law, has noted that factors suggesting an alter ego relationship include (i) commingling of funds and other assets and failure to segregate funds of the separate entities; (ii) the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; and (iii) inadequate capitalization, the diversion of assets from a corporation to another entity to the detriment of creditors, or the manipulation of assets so as to concentrate the assets in one and the liabilities in another.  In re Schwarzkopf, 626

9

F.3d 1032, 1038 (9th Cir. 2010); Doe v. Unocal Corp., 248 F.3d 915, 927 (9th Cir. 2001).

A lack of supporting facts standing alone does not necessarily mean that an attachment must be immediately vacated at a post-attachment hearing because the Ninth Circuit requires limited jurisdictional discovery where it might demonstrate facts sufficient to show a basis for jurisdiction.  Resource Marine Pte, Ltd. v. Solym Carriers (London) Ltd., 2012 WL 6628966, *3 (E.D. Cal. Dec. 19, 2012) (granting discovery where verified complaint alleged that defendants were alter egos of one another and were not legally distinct entities) (citing Harris Rutsky & Co. Insurance Services, Inc., 328 F.3d at 1135); see also Kite Shipping LLC, 2012 WL 4049936 at *6-*7 (reversing magistrate judge's denial of plaintiff's request for limited discovery on alter ego relationship where there were no alter ego allegations in underlying complaint as to which attachment order issued, but such allegations were included in amended complaint filed during litigation of motion to vacate attachment); Twentieth Century Fox International Corp. v. Scriba, 385 Fed. Appx. 651, 652-53 (9th Cir. 2010) (reversing district court's order granting motion to dismiss and denying jurisdictional discovery on alter ego issue where discovery sought was specific and where allegations, if supported by some evidence, would provide strong argument for exercise of jurisdiction); Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008) (discovery may be appropriately granted where pertinent facts bearing on question of jurisdiction are controverted or where a more satisfactory showing of facts is necessary; district court refusal to permit discovery will not be reversed except upon clear showing that denial of discovery results in actual and substantial prejudice to complaining litigant), cert. denied, 555 U.S. 1171 (2009); Hawknet Ltd., 2008 WL 1944817 at *5 (granting discovery as to whether non-defendant claimant, to be named as defendant for first time in proposed second amended complaint, was alter ego of defendants named in then operative complaint).

1  III.   **FACTS**

2       A.      **Original Verified Complaint Allegations**

3       On or about November 24, 2006, Plaintiff, owner of maritime vessel ANL

4  Kokoda (the "Kokoda")[15] chartered such vessel to ANL Container (an Australian

5  entity) for a period of time ("charter period") pursuant to a maritime contract

6  known as a "Charterparty" ("Kokoda Charterparty").  (OC ¶¶ 3, 6; OC Ex. 1).

7  Clause 50 of the Kokoda Charterparty governed Plaintiff's obligations, upon

8  redelivery of the Kokoda at the end of the charter period, to purchase any

9  remaining marine fuel on board ("bunkers") at a price to be calculated as described

10 therein.  (OC ¶ 7; OC Ex. 1).  Clause 83 of the Kokoda Charterparty afforded ANL

11 Container the right to deduct from the hire payment to Plaintiff, certain expenses

12 supported by relevant vouchers.  (OC ¶ 8; OC Ex. 1).  Clause 84 of the Kokoda

13 Charterparty prohibited Plaintiff from selling the Kokoda during the charter period

14 absent ANL Container's prior approval of the potential new owners which was not

15 to be unreasonably withheld.  (OC ¶ 10; OC Ex. 1).

16      Plaintiff alleged that ANL Container breached Clauses 50, 83, and 84.  (OC

17 ¶¶ 7, 8, 19).  As to Clause 50, Plaintiff asserted that ANL Container incorrectly

18 calculated the price of the bunkers remaining on board at redelivery and, based

19 thereon, deducted an excessive sum from amounts it owed to Plaintiff.  (OC ¶ 7;

20 OC Exs. 2, 3).  As to Clause 83, Plaintiff asserted that ANL Container deducted

21 from the hire payment to Plaintiff certain expenses without the requisite vouchers.

22 (OC ¶ 8).  As to Clause 84, Plaintiff asserted that ANL Container unreasonably

23 withheld approval of a sale of the Kokoda by multiple acts and omissions.  (OC

24 ¶ 19).  Plaintiff claimed that ANL Container's breaches of Clauses 50, 83 and 84

25 caused Plaintiff to suffer $1,134,962.01 in damages.  (OC ¶¶ 9, 20).

26 ///

27

28
_____

[15]The Kokoda's name has since been changed to the M/V Orient Spirit.  (Zafet Decl. ¶ 3).

Pursuant to the terms of Kokoda Charterparty, the parties' disputes were submitted for binding arbitration in London with English law to apply.[16]  (OC ¶ 21).  Such arbitration is ongoing.  (OC ¶ 21).  The instant action is ancillary to the London arbitration.  (OC ¶ 21).  Plaintiff assertedly initiated the instant proceeding in order to obtain jurisdiction over ANL Container and to obtain security for Plaintiff's claims in aid of the London arbitration proceedings.  (OC ¶ 21).

Plaintiff represented that interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law and that it is entitled to seek and recover interest on its asserted damages in the London arbitration.  (OC ¶ 23) (citing Sections 49 and 63 of the Arbitration Act of 1996).  Accordingly, in addition to the above-referenced damages ($1,134,962.01), Plaintiff represented that it anticipates recovering interest ($209,108.10) and attorneys' fees ($200,000), for a total of $1,544,070.11.  (OC ¶ 24).

As of the filing of the Original Complaint, ANL Container was not present and could not be found in the Central District of California within the meaning of Rule B of the Supplemental Rules.  (OC ¶ 27).  Plaintiff asserted its belief that ANL Container would nonetheless have certain assets in the Central District of California during the pendency of this action.  (OC ¶ 27).  More specifically, Plaintiff represented that a maritime vessel, the M/V Winter D (the "Winter D") was on time charter to ANL Container and would be calling on the Port of Los Angeles on January 25, 2014, and that Plaintiff believed that the (fuel) bunkers or payment for bunkers on board the Winter D were assets of ANL Container which

///
///
///
///

---

[16]ANL Singapore is not a party in the London arbitration.  (Yong Decl. ¶ 9).

would be located in the Central District of California.  (OC ¶¶ 28, 29).[17]  Plaintiff prayed that, among other things, the bunkers on board the Winter D be attached and seized pursuant to Rule B.

### B.    First Amended Verified Complaint Allegations

As noted above, Plaintiff filed the First Amended Complaint concurrently with its Opposition to the Motion to Vacate.  The allegations of the First Amended Complaint essentially mirror those in the Original Complaint except:  (1) Plaintiff added ANL Singapore (a Singapore entity) as a defendant (FAC ¶ 4); (2) Plaintiff added allegations to the effect that ANL Container is the alter ego of ANL Singapore (FAC ¶¶ 28-34);[18] (3) Plaintiff expanded certain allegations to

---

[17]At the hearing on the Motion to Vacate, Plaintiff's counsel represented that this allegation was predicated upon:  (1) a statement made by a source on board the Winter D to Plaintiff's counsel's investigator who then shared the statement with counsel to the effect that the Winter D had been time-chartered by ANL Container; (2) ANL Container's publicly available vessel schedules, accessible via its website, which listed the Winter D as being part of ANL Container's fleet; and (3) an August 28, 2013, news article from Lloyd's List Australia which reported that ANL Container would be using the Winter D as a replacement vessel in connection with its west coast service.  Although the first item may be pertinent to counsel's state of mind and whether counsel acted in good faith in the event the Moving Party later seeks to establish that the attachment was "wrongful" – something not before the Court at this juncture – such item is not admissible for the truth of the matter asserted and is not considered by this Court in assessing probable cause.  See supra notes 1, 4 and 13.

[18]More specifically, Plaintiff alleged:  (1) upon information and belief, at all material times, there existed such a unity of ownership and interest between ANL Container and ANL Singapore that no separation exists between them and the corporate form of ANL Container has been disregarded such that ANL Singapore primarily transacts the business of ANL Container (FAC ¶ 28); (2) ANL Singapore is a receiving/paying agent of ANL Container such that ANL Singapore is now, or will soon be, holding assets belonging to ANL Container or vice versa (FAC ¶ 29); (3) ANL Singapore has made payments on behalf of ANL Container for outstanding debts (including the bunkers for the Kokoda and Winter D) (FAC ¶ 30); (4) It is not general practice in the maritime community, nor anywhere else, for independent companies to make or receive large payments on behalf of other "independent" companies (FAC ¶ 31); (5) Payments sent or received on behalf of another independent company are suggestive of a relationship that is not "arms length" (FAC ¶ 32); (6) ANL Singapore is a wholly owned subsidiary of ANL Container and both share officers and directors and manifest a disregard of corporate formalities

(continued...)

encompass both ANL Container and ANL Singapore: (a) indicating that neither was or could be found in the Central District of California within the meaning of Rule B (FAC ¶ 27); (b) asserting its belief that both would nonetheless have certain assets in the Central District of California during the pendency of this action (FAC ¶ 27); and (c) asserting its belief that the (fuel) bunkers or payment for bunkers on board the Winter D were assets of both ANL Container and ANL Singapore which would be located in the Central District of California (FAC ¶ 29); (4) Plaintiff eliminated the allegation that Winter D was on time charter to ANL Container and would be calling on the Port of Los Angeles on January 25, 2014; and (5) Plaintiff added allegations regarding post-attachment activities and proceedings, including the pendency of the Motion to Vacate and the execution of a Letter of Undertaking (LOU) on behalf of ANL Container and ANL Singapore in the amount of $1,544,070.11 in exchange for the release of the attached property (FAC ¶ 27).[19]

### C. Facts Pertaining to Alter Ego Issue and Whether Attached Property Constitutes Property of a Defendant

ANL Container is a company registered under the laws of Australia. (Yong Decl. ¶ 10). ANL Singapore is a company registered under the laws of Singapore. (Yong Decl. ¶ 11; Yong Ex. H). ANL Singapore is a wholly owned subsidiary of

///

///

///

///

---

[18](...continued)
(FAC ¶ 33); and (7) Based on the foregoing, there are reasonable grounds to conclude ANL Container is the alter ego of ANL Singapore and, therefore, Plaintiff has a valid prima facie *in personam* claim against ANL Container based on alter ego liability (FAC ¶ 34).

[19]Property which is attached pursuant to the execution of maritime process may be released, on the giving of security by stipulation of the parties, conditioned to answer the judgment of the court or of any appellate court. Supp. Rule E(5)(a), (c).

ANL Container.  (Yong Decl. ¶ 12; Yong Ex. H; Zafet Decl. ¶ 4; Zafet Ex. 1; Picciurro Decl. ¶ 11; Picciurro Ex. 11).[20]

ANL Singapore's managing director attests:  ANL Singapore's board of directors consists of five directors.  (Yong Decl. ¶ 12).  ANL Singapore's chairman of the board is also on ANL Container's board of directors.[21]  (Yong Decl. ¶ 12).  No other director of ANL Singapore sits on ANL Container's board of directors.  (Yong Decl. ¶ 12).[22]  ANL Singapore's board typically meets three or four times a year.  (Yong Supp. Decl. ¶ 6).  Board papers, written business performance and financial reports and extensive minutes of board proceedings are circulated at the board meetings.  (Yong Supp. Decl. ¶ 6).  ANL Singapore has its own constitution, is capitalized in the amount of Singapore $200,000 [the equivalent of over U.S. $150,000] – an amount which the managing director believes to be adequate – and maintains its own (separate from ANL Container) bank accounts from which ANL Singapore operates its company business.   (Yong Decl. ¶ 12; Yong Supp. Decl. ¶ 5).  ANL Singapore submits its financial reports to regulatory authorities in Singapore, declares its own profits and conducts its own separate external audits through outside auditors.  (Yong Decl. ¶ 12).  ANL Singapore has its own staff and office address and maintains its own suite of offices and telephone numbers.  (Yong Decl. ¶ 12).  It does not share offices or staff with ANL Container.  (Yong Decl. ¶ 12).  ANL Singapore enters into its own contracts.  (Yong Decl. ¶ 13).  It conducts its own business separate from ANL Container.   (Yong Decl. ¶ 13).

---

[20]ANL Container's "Financial Report 2012" reflects that ANL Container consolidates the accounts of its subsidiaries, including ANL Singapore.  (Picciurro Decl. ¶ 16; Picciurro Ex. 16).

[21]ANL Singapore director John Ernest Lines – an Australian national – sits on ANL Container's board of directors.  (Picciurro Decl. ¶¶ 11, 12; Picciurro Exs. 11, 12).

[22]However, ANL Singapore officer (secretary) Kamlesh Devehand – another Australian national who has the same Singapore address as John Ernest Lines – serves on ANL Container's board of directors.  (Picciurro Decl. ¶¶ 11, 12; Picciurro Exs. 11, 12).

ANL Singapore is not a joint venturer or partner of ANL Container. (Yong Decl. ¶ 11). It does not "trade interchangeably" or commingle its assets or property with ANL Container. (Yong Decl. ¶ 13).

ANL Singapore apparently does not have its own website and is listed as a "Regional Office" on ANL Container's website. (Picciurro Decl. ¶ 15; Picciurro Ex. 15).

As noted above, Plaintiff chartered the Kokoda to ANL Container pursuant to the Kokoda Charterparty. (OC Ex. 1). ANL Singapore's managing director attests that ANL Singapore is not a party to the Kokoda Charterparty. (Young Decl. ¶ 9). Nonetheless, on at least six occasions between October 2010 and August 2011, ANL Singapore paid for ANL Container's charter hire of the Kokoda. (Zafet Decl. ¶ 5; Zafet Ex. 2). On May 25, 2011, ANL Container expressed a desire to "novate" the Kokoda Charterparty to ANL Singapore so that ANL Singapore would be the charterer of the Kokoda instead of ANL Container. (Zafet Decl. ¶ 4; Zafet Ex. 1). Plaintiff did not accept or enter into any novation, and ANL Container remained the charterer of the Kokoda for the remainder of the charter period. (Zafet Decl. ¶ 4).[23]

On or about August 15, 2013, ANL Singapore assertedly time chartered the Winter D from a third party.[24] (Yong Decl. ¶¶ 4, 5; Yong Ex. A). ANL

---

[23]The record does not reflect whether or when Plaintiff communicated its rejection of the novation request to ANL Container or ANL Singapore. ANL Singapore's managing director states that "ANL Singapore made charter payments on the [Kokoda] from May 2011 through Aug[ust] 2011 (when the charter expired and the vessel redelivered to plaintiff) on the assumption a novation agreement would be reached with plaintiff." (Yong Supp. Decl. ¶ 14). ANL Singapore's managing director does not offer an explanation as to why ANL Singapore made a charter payment on the Kokoda in October 2010.

[24]On January 26, 2014, after the bunkers were attached, counsel for Plaintiff and ANL Singapore conferred. (Klein Decl. ¶ 3; Picciurro Decl. ¶¶ 3, 4). ANL Singapore's counsel advised Plaintiff's counsel that the Winter D Charterparty named ANL Singapore, not ANL Container. (Klein Decl. ¶ 3; Klein Ex. A; Picciurro Decl. ¶ 3; Picciurro Ex. 1). Plaintiff's counsel requested a copy of the Winter D Charterparty. (Picciurro Decl. ¶ 4). ANL Singapore's
(continued...)

Singapore's managing director attests that ANL Container is not a party to the Winter D Charterparty and that Plaintiff is incorrect in asserting the contrary. (Yong Decl. ¶¶ 7, 9).

On August 28, 2013, a news article from Lloyd's List Australia reported that ANL Container (not ANL Singapore) would be using the Winter D as a replacement vessel in connection with its west coast service. (Picciurro Decl. ¶ 14; Picciurro Ex. 14).

Between August 29, 2013 and January 24, 2014, ANL Singapore made eleven (11) payments for the charter hire of the Winter D. (Yong Decl. ¶ 5; Yong Ex. B).

Bunkers for ANL Singapore chartered vessels are assertedly arranged and ordered by CMA CGM, which provides bunker services for ANL Singapore. (Yong Decl. ¶ 6). Between August 28, 2013 and January 24, 2014, six invoices for

---

[24](...continued)
counsel indicated that because of an Australian holiday, he could not then supply the Winter D Charterparty or other documentary evidence indicating that ANL Singapore, as opposed to ANL Container was the owner of the bunkers. (Picciurro Decl. ¶ 4). ANL Singapore's counsel apparently did not explain why the provision of the Winter D Charterparty by ANL Singapore – a Singapore entity – was impacted by a holiday in Australia – ANL Container's home country. Plaintiff's counsel thereafter repeatedly requested a copy of the Winter D Charterparty. (Picciurro Decl. ¶¶ 5, 6; Picciurro Exs. 2, 3; Klein Decl. ¶ 5; Klein Ex. C). ANL Singapore's counsel ultimately provided it on February 7, 2014. (Picciurro Decl. ¶ 10; Picciurro Ex. 9). Plaintiff questions the authenticity of the Winter D Charterparty for multiple reasons. First, although the Winter D was delivered to ANL Singapore on August 28, 2013, the Winter D Charterparty is dated October 9, 2013 and does not reflect its retrospective application – something which Plaintiff's representative indicates is "highly unusual," but which ANL Singapore's managing director attests is "not unusual." (Yong Decl. ¶ 5; Yong Ex. A; Zafet Decl. ¶ 6; Yong Supp. Decl. ¶ 9). Second, the Winter D Charterparty reflects that such vessel called at the STX Korea when other evidence demonstrates (and the Moving Party concedes), that this did not occur. (Picciurro Decl. ¶ 10; Picciurro Ex. 10; Yong Supp. Decl. ¶ 10 [surmising that incorrect reference was a "drafting error"]). Third, plaintiff points to the absence of a "clean fixture recap" email – essentially a contemporaneous confirmation of the charter agreement, including the parties thereto – something which is typically produced once a charter is fixed. (Zafet Decl. ¶ 6). The Moving Party's counsel represented at the hearing that he had seen the clear fixture recap and that it identified ANL Singapore as the chartering entity.

(fuel) bunkers for the Winter D appear to have been issued.[25]  (Yong Decl. ¶ 6; Yong Exs. C-G).  None of the invoices were directed to "ANL Singapore" as such. (Yong Decl. ¶ 6; Yong Exs. C- G).  Two invoices were directed to "ANL Container Lines Pty Ltd" – something which ANL Singapore's managing director attests was an error by a bunker supplier.  (Yong Decl. ¶ 6; Yong Ex. F).  The remaining invoices were directed to  "CMA CGM," "CMA CGM ANL," "ANL c/o CMA CGM," and/or "ANL c/o CMA CGM SA."  (Yong Decl. ¶ 6; Yong Exs. C-E, G). Between September 30, 2013 and January 9, 2014, ANL Singapore made five (5) payments corresponding to the foregoing invoices for the Winter D bunkers.[26] (Yong Decl. ¶ 6; Yong Ex. C).

ANL Singapore's managing director attests:  The bunkers aboard the Winter D which were attached in this action were ordered and paid for by ANL Singapore, were the property of ANL Singapore and were for the Winter D's use in conducting ANL Singapore's business.  (Yong Decl. ¶ 8).  ANL Container did not pay for any bunkers on the Winter D or for ANL Singapore's bunker purchases and Plaintiff is incorrect in asserting the contrary.  (Yong Decl. ¶¶ 7, 9).

As of February 17, 2014, ANL Container continued to list the Winter D as being part of its fleet of vessels.   (Picciurro Decl. ¶ 13; Picciurro Ex. 13).

## IV.   DISCUSSION

The Moving Party essentially asserts that the attachment must be vacated because the attached property is not "property of" ANL Container – the only

---

[25]Plaintiff's counsel specifically requested that ANL Singapore's counsel provide copies of such invoices at least as early as February 7, 2014 (preceded by what appear to be more general requests for documentation regarding the bunkers).  (Klein Decl. ¶ 5; Klein Ex. C). Plaintiff's counsel represented at the hearing that Plaintiff did not receive such items until the Motion to Vacate was filed.

[26]ANL Singapore's counsel provided documentation regarding such payments to Plaintiff's counsel on January 29, 2014.  (Fischer Decl. ¶ 4; Fischer Ex. B; Picciurro Decl. ¶ 7; Picciurro Ex. 4).

defendant named in the Original Complaint upon which the attachment was predicated and the only defendant named in the attachment order and process. (Motion to Vacate at 2).  Rather, the Moving Party contends, the fuel bunkers in issue were owned and paid for by ANL Singapore.  (Motion to Vacate at 2). Plaintiff questions the veracity of the evidence presented by the Moving Party regarding ANL Singapore's ownership of the fuel bunkers and counters that there is probable cause for the attachment because ANL Singapore is assertedly the alter ego of ANL Container – as alleged in the First Amended Complaint filed after the Motion to Vacate – and because there are otherwise reasonable grounds to believe that ANL Container had an attachable interest in the bunkers.  (Opposition at 1-2, 12).  With respect to Plaintiff's alter ego contentions, the Moving Party responds that the attachment order must be vacated because such order is not directed against ANL Singapore or its property and can only reach the property of a defendant named in the Original Complaint which in this case, neither named ANL Singapore as a defendant nor alleged that ANL Singapore was liable under an alter ego theory.  (Reply at 1-2).  The Moving Party further asserts that the First Amended Complaint cannot salvage the attachment as the attachment assertedly was "void ab initio"[27] and, in any event, that the allegations of the First Amended Complaint are insufficient to pierce the corporate veil.  (Reply at 2).

First, the Court finds that probable cause does not support the continued attachment of the substitute security in issue based on ANL Container having an independent attachable interest therein separate and apart from an alter ego theory.[28]  There is some admissible evidence from which one could infer that ANL

---

[27]"Void ab initio" means "[n]ull from the beginning[.]"  Black's Law Dictionary 1805 (10th ed. 2014).

[28]Plaintiff, citing a single case, contends that a right to possession constitutes an attachable legal interest.  (Opposition at 12) (citing World Fuel Services, Inc. v. S.E. Shipping Lines Pfc., Ltd., 2011 U.S. Dist. LEXIS 14071 (E.D. La. Feb. 4, 2011) (court declined to

(continued...)

Container had an attachable interest in the Winter D fuel bunkers – *e.g.*, ANL Container's publicly available vessel schedule listing the Winter D as being part of ANL Container's fleet; the August 28, 2013, news article from Lloyd's List Australia which reported that ANL Container would be using the Winter D as a replacement vessel in connection with its west coast service; the fact that one fuel provider invoiced ANL Container for Winter D fuel and that other fuel invoices refer to "ANL" and not "ANL Singapore."  However, the clear weight of the evidence in the record suggests the contrary – *e.g.*, the Winter D Charterparty identifying ANL Singapore as the charterer of such vessel, the documentation reflecting that ANL Singapore paid for the Winter D fuel bunkers, the ANL Singapore's managing director's sworn attestations that ANL Singapore was a party to the Winter D Charterparty and ANL Container was not and that the attached bunkers aboard the Winter D were ordered and paid for by ANL Singapore, were the property of ANL Singapore and were for the Winter D's use in conducting ANL Singapore's business.  In short, the Court does not find that there is a fair or reasonable probability that plaintiff will prevail on the theory that ANL Container independently had an attachable interest in the fuel bunkers (and correspondingly in the substitute security), separate and apart from an alter ego theory.  Given (i) this determination; (ii) the fact that the underlying complaint and attachment order name only ANL Container; and (iii) the legal authorities detailed above, the original attachment should be vacated.

Second, the Court likewise rejects Plaintiff's argument that probable cause supports the continued attachment of the substitute security based upon an alter ego relationship between ANL Container and ANL Singapore.  Here again, there are

---

[28](...continued)
reconsider its denial of a motion to vacate because it found that its prior determination that right of possession  to fuel bunkers constitutes an attachable legal interest therein under Supp. Rule B was not manifest error of law)).  Here, the Court does not find probable cause that Plaintiff had a right to possess the fuel bunkers in issue.

some admissible facts which, when taken together, support an inference that the two entities have an alter ego relationship – *e.g.*, ANL Singapore is a wholly owned subsidiary of ANL Container, they share two directors/officers, ANL Container's Financial Report 2012 reflects that ANL Container consolidates the accounts of ANL Singapore and its other subsidiaries, ANL Singapore does not have its own website and is listed as a regional office on ANL Container's website, ANL Singapore paid for fuel on the Kokoda which was chartered by ANL Container, fuel invoices for the Winter D – which assertedly was chartered by ANL Singapore – bear ANL Container's name, and ANL Container's publicly available vessel schedule lists the Winter D as being part of ANL Container's fleet.  However, other admissible facts weigh against such an inference – *e.g.*, ANL Singapore's managing director's detailed attestations that corporate formalities and separateness are observed (*i.e.*, ANL Singapore has regular board meetings where minutes, performance and financial reports and other documents are circulated, a separate constitution, separate bank accounts from ANL Container and its own staff and offices which it does not share with ANL Container; it submits its financial reports to regulatory authorities in Singapore, declares its own profits and conducts its own separate external audits through outside auditors; it enters into its own contracts, conducts its own business separate from ANL Container and does not commingle its assets or property with ANL Container); ANL Singapore's managing director's attestation that ANL Singapore is capitalized in the amount of Singapore $200,000 (the equivalent of over U.S. $150,000) – an amount which he believes to be adequate; the documentation reflecting that ANL Singapore paid for the Winter D fuel bunkers.  In short, based upon its consideration of all the pertinent facts in the record, the Court does not find that there is a fair or reasonable probability that Plaintiff will prevail on the theory that the fuel bunkers/the substitute security constitute attachable property based on an alter ego theory.

///

Third, the Court should deny Plaintiff's request for discovery because this is not a case in which further discovery might demonstrate facts sufficient to show a basis for jurisdiction.

Fourth, the Court should deny Plaintiff's request for a stay of the order vacating attachment and the corresponding release of the security (except to the extent otherwise mandated by Fed. R. Civ. P. 62(a)).[29] More specifically, Plaintiff has not made a strong showing that it is likely to succeed on the merits and that the risk of substantial injury to ANL Singapore if the stay is issued  outweighs the risk of irreparable injury to Plaintiff and any public interest if the stay is denied (particularly given Plaintiff's counsel's representation at the hearing that the LOU, by its terms, does not contemplate the release of the security until review is had). See Humane Society of United States v. Gutierrez, 523 F.3d 788, 789-90 (9th Cir. 2008) (in deciding whether to stay denial of preliminary injunction courts consider whether stay applicant has made strong showing that it is likely to succeed on merits, whether applicant will be irreparably injured absent stay, whether issuance of stay will substantially injure other interest parties in proceeding, and where the public interest lies).

Finally, to the extent the Motion to Vacate continues to seek costs incurred in connection with this matter (see supra note 1), it should be denied.  While this Court has ruled against Plaintiff, it nonetheless appears to the Court based on the current record, that Plaintiff and its representatives have acted in good faith based upon information reasonably known to them at the pertinent times in issue.

///

///

///

---

[29]Except as otherwise stated therein, Rule 62(a) of the Federal Rules of Civil Procedure provides that "no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 14 days have passed after its entry."

**V.     RECOMMENDATION**

IT THEREFORE IS RECOMMENDED that the District Judge issue an Order:  (1) approving and accepting this Report and Recommendation; (2) granting the Motion to Vacate to the extent it seeks an order vacating the attachment; (3) otherwise denying the Motion to Vacate; and (4) denying Plaintiff's requests for discovery and a stay.

DATED:  July 25, 2014

_____/s/_____

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

23