**KAYE, ROSE & PARTNERS, LLP**
Bradley M. Rose, Esq. (126281)
André M. Picciurro, Esq. (239132)
1801 Century Park East, Suite 1500
Los Angeles, California  90067
Telephone: (310) 551-6555
Facsimile: (310) 277-1220
E-mail: brose@kayerose.com
           apicciurro@kayerose.com

Attorneys for Plaintiff
**ORIENT SPIRIT NAVIGATION LIMITED**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ORIENT SPIRIT NAVIGATION LIMITED,<br><br>          Plaintiff,<br><br>     v.<br><br>ANL CONTAINER LINE PTY LIMITED,<br><br>          Defendant. | Case No.:   CV-14-0572 PA (JCx)<br><br>**PLAINTIFF ORIENT SPIRIT NAVIGATION LIMITED'S OBJECTIONS TO MAGISTRATE JUDGE CHOOLJIAN'S REPORT AND RECOMMENDATION [DKT. # 44]** |

COMES NOW, Plaintiff ORIENT SPIRIT NAVIGATION LIMITED (hereinafter "Orient Spirit"), by its undersigned counsel, and in accordance with FED. R. CIV. P. 72, submits the following Objections to Magistrate Judge Jacqueline Chooljian's Report and Recommendation [Dkt. # 44] dated July 25, 2014, in which she recommends the Court issue an order, in pertinent part, granting ANL SINGAPORE PTE., LTD.'s (hereinafter "ANL Singapore") Motion to Vacate Attachment and denying Orient Spirit's request for discovery. Plaintiff respectfully submits that Magistrate Judge erred in weighing ANL Singapore's evidence more heavily than Orient's Spirit's, and that she abused her discretion in denying jurisdictional discovery.

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION/SUMMARY OF ARGUMENT ................................... 1

II. ARGUMENT ................................................................................................ 5

    A. THE REPORT AND RECOMMENDATION IS SUBJECT TO *DE NOVO* REVIEW ................................................................................ 5

    B. ORIENT SPIRIT SATISFIED ITS MINIMAL PROBABLE CAUSE BURDEN AT THE RULE E(4)(F) STAGE TO SUSTAIN THE RULE B ATTACHMENT ........................................ 6

        1. Orient Spirit's Burden is to Evidence Reasonable Grounds to Sustain the Attachment ........................................... 6

        2. The Evidence that ANL-CL Has an Independent Attachable Interest in the Bunkers is Sufficient to Sustain the Attachment ............................................................ 7

        3. The Evidence of Alter Ego is Sufficient to Sustain the Attachment ....................................................................... 9

    C. AT A MINIMUM, ORIENT SPIRIT SHOULD BE AFFORDED AN OPPORTUNITY TO CONDUCT DISCOVERY INTO ITS ALTER EGO CLAIMS ........................ 13

III. CONCLUSION ........................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boschetto v. Hansing*
  539 F.3d 1011 (9th Cir. 2008) .................................................................. 15

*Bridas S.A.P.I.C. v. Government a/Turkmenistan*
  447 F.3d 415 (5th Cir. 2006) .................................................................... 10

*Budisukma Permai Sdn v. NMK. Products & Agencies*
  606 F. Supp. 2d 391 (S.D.N.Y. 2009) ...................................................... 11

*Chan v. Society Expeditions*
  123 F.3d 1287 (9th Cir. 1997) .................................................................. 10

*Classic Maritime Inc. v. Limbungan Makmur Sdn Bhd*
  646 F. Supp. 2d 364 (S.D.N.Y. 2009 ........................................................ 11

*Cockett Marine Oil Ltd. v. M/V LION*
  2011 WL 1833286, at *2, *5 & nn. 2-3 (E.D. La. May 12, 2011) .............. 9

*Deiulemar Compagnia Di Navigazione SpA v. Dabkomar Bulk Carriers Ltd.*
  2006 WL 317241, at *5 (S.D.N.Y. Feb. 10, 2006) ..................................... 6

*Del Mar Seafoods Inc. v. Cohen*
  2007 WL 2385114, at *3 (N.D. Cal. Aug. 17, 2007) .................................. 7

*Equatorial Marine Fuel Mgmt. Servs. PTE v. MISC Berhad*
  591 F.3d 1208 (9th Cir. 2010) .................................................................... 7

*Essar International Ltd. v. Martrade Gulf Logistics, FZCO*
  2007 WL 2456629, at *3 (S.D.N.Y. Aug. 23, 2007) .................................. 9

*F.T.C. v. Publishing Clearing House, Inc.*
  104 F.3d 1168 (9th Cir. 1997) .................................................................... 9

*Hawknet Ltd. v. Overseas Shipping Agencies*
  2008 WL 1944817, at *5 (S.D.N.Y. Apr. 29, 2008) ................................. 15

*Kite Shipping LLC v. San Juan Nav. Corp.*
  2012 WL 4049936 (S.D. Cal. Sept. 13, 2012) .......................................... 16

*KPI Bridge Oil Sing. PTE Ltd. v. Berlian Laju Tanker TBK PT*
  2012 U.S. Dist. LEXIS 37751 (N.D. Cal. Mar. 20, 2012) .................. 11, 15

*Maersk, Inc. v. Neewra, Inc.*
  443 F. Supp. 2d 519 (S.D.N.Y. 2006) ........................................................ 9

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC*
  268 F.3d 58 (2d Cir. 2001) ....................................................................... 10

*Maryland Tuna Corp. v. MS Benares*
    429 F.2d 307 (2d Cir. 1970) ................................................................................. 15

*Naftomar Shipping and Trading Co. Ltd. v. KMA International S.A.*
    2011 WL 888951 (S.D. Tex. Mar. 10, 2011) ........................................................ 14

*OS Shipping Co. Ltd. v. Global Maritime Trust(s) Private Ltd.*
    2011 WL 1750449, at *5 (D. Or. May 6, 2011) ..................................................... 7

*Oxford Capital Corp. v. U.S.A.*
    211 F.3d 280 (5th Cir. 2000) ................................................................................ 10

*Rea Navigation, Inc v. World Wide Shipping Ltd.*
    2010 AMC 221 (S.D.N.Y. 2009) .......................................................................... 15

*Resource Marine PTE, Ltd. v. Solym Carriers (London) Ltd.*
    2012 WL 6628966, at *3 (E.D. Cal. Dec. 19, 2012) ............................................. 15

*Sea Prestigio, LLC v. M/Y Triton*
    2010 WL 5376255, at *1 (S.D. Cal. Dec. 22, 2010) ............................................... 7

*T&O Shipping, Ltd. v. Source Link Co., Ltd.*
    2006 WL 3513638 (S.D.N.Y. Dec. 5, 2006) .......................................................... 7

*Totalmar Navigation Corp. v. ATN Industries, Inc.*
    2008 WL 5111316, at *4 (S.D.N.Y. Dec. 3, 2008) ................................................. 7

*Transport Panamax, Ltd. v. Kremikovtzi Trade E.O.O.D.*
    2008 WL 2546180 (S.D.N.Y. 2008) ..................................................................... 11

*Twentieth Century Fox Int'l Corp. v. Scriba*
    385 Fed. Appx. 651 (9th Cir. 2010) ...................................................................... 15

*United States* v. *Standard Beauty Supply Stores, Inc.*
    561 F.2d 774 (9th Cir. 1977) ................................................................................ 10

*World Fuel Servs. v. SE Shipping Lines PTE, Ltd.*
    2011 WL 446653 (E.D. La. Feb. 4, 2011) .............................................................. 8

**Rules**

28 U.S.C. § 636(b)(1) ................................................................................................. 6

28 U.S.C. § 636(b)(1)(C) ............................................................................................ 5

FED. R. CIV. P. 72 ....................................................................................................... 5

FED. R. CIV. P. 72(b) .................................................................................................. 5

Rule E (4)(f) of the Supplemental Admiralty Rules ............................................. 6, 7

## I.    INTRODUCTION/SUMMARY OF ARGUMENT

On January 25, 2014, Orient Spirit caused bunkers (fuel oil) aboard M/V WINTER D (also the "Vessel") so as to be attached as security for a potential award in an arbitration presently pending between Orient Spirit and ANL CONTAINER LINE PTY LIMITED (hereinafter "ANL-CL") pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims. The bunkers were released when ANL-CL and ANL Singapore provided substitute security in the form of a letter of undertaking. On February 12, 2014, ANL Singapore moved to vacate the attachment on the sole basis that it, and not ANL-CL, owned the bunkers. Orient Spirit contends that: (1) ANL-CL owned and/or had an attachable interest in the bunkers; and (2) even if ANL Singapore owned the bunkers, the two entities are alter egos. To defeat a motion to vacate, a plaintiff need only demonstrate reasonable grounds for the attachment and does not have to prove its case.

Orient Spirit respectfully contends the Magistrate Judge erroneously found "there is [not] a fair or reasonable probability that plaintiff will prevail on the theory that [ANL-CL] independently had an attachable interest in the fuel bunkers (and correspondingly in the substitute security)." [Dkt. # 44, 20:15-18.] Orient Spirit presented *undisputed* and *independent* evidence that: (1) ANL-CL publicly holds M/V WINTER D out as being part of its fleet on its website and in media reports; and (2) all of the invoices from fuel providers who supplied bunkers aboard M/V WINTER D are addressed to either "ANL-CL" or "ANL"; there is not invoice is addressed to "ANL Singapore." The latter fact alone should defeat the Motion to Vacate as it established probable cause that ANL-CL owns the bunkers or at least has an attachable interest in same. Indeed, the Magistrate Judge correctly found this evidence supported an inference that ANL-CL had an attachable interest in the bunkers. The evidence introduced by ANL Singapore was insufficient to defeat this presumption. ANL Singapore produced

1

a Charterparty (lease agreement for the Vessel) which ostensibly identifies ANL Singapore as the charterer of M/V WINTER D. However, there are serious issues of fact surrounding that Charterparty: (1) it is suspiciously dated months after the Vessel was allegedly delivered to ANL Signapore (it is unbelievable that one would rent a house, let alone a container ship, without a contract governing the relationship for several months); (2) it indicates the Vessel was delivered in Korea despite the undisputed admission by ANL Singapore that the Vessel was not in Korea at any material time; (3) ANL Singapore's counsel represented he was unable to produce a copy of the Charterparty showing ANL Singapore as a the charterer of M/V WINTER D immediately following the attachment due to a public holiday in Australia (where ANL-CL is located, but which should not have affected ANL Singapore's ability to produce same) and did not produce same until February 7, 2014 - almost two weeks after the attachment - despite numerous requests by Orient Spirit[1]; and (4) despite ANL Singapore's counsel's inadmissible hearsay statement at the hearing that ANL Singapore is reflected as the charterer on the clean fixture recap[2]. However, ANL Singapore has tellingly refused to produce this document despite numerous requests by Orient Spirit. At a bare minimum, the Charterparty's erroneous contents and the circumstances surrounding its production raise fair and reasonable doubts as to its accuracy and authenticity, such that it should not be weighed more heavily than Orient Spirit's undisputed, independent evidence.

The only other evidence produced by ANL Singapore is equally

---

[1] Notably, the Owners of M/V WINTER D (the other party to the charter agreement) also inexplicably refused to produce a copy of the Charterparty upon the request of Orient Spirit. [Dkt. # 23-1, 2:20-26.]

[2] A 'fixture recap' is a communication between the brokers representing the Owner of the vessel and the broker representing the charterer summarizing the agreed upon terms of the charterparty. The document is used in drafting the formal charterparty. Such documents always identify the parties to the contract.

Kaye, Rose & Partners LLP

insufficient to defeat the inference that ANL-CL had an attachable interest in the bunkers. ANL Singapore's evidence that it paid for the bunkers (which were invoiced to either "ANL-CL" or "ANL") and paid for the charter hire of M/V WINTER D is not persuasive in light of other undisputed evidence introduced by Orient Spirit that ANL Singapore has paid for the operating expenses of ANL-CL on at least six occasions in the past. The self-serving declaration of ANL Singapore's managing director should similarly not be held sufficient to overcome the inference that ANL-CL has an attachable interest in the bunkers.

Similarly, Orient Spirit respectfully contends the Magistrate Judge erroneously found there was no probable cause to support "the continued attachment of the substitute security based upon an alter ego relationship between ANL Container and ANL Singapore." [Dkt. # 44, 20:22-24.] The Magistrate Judge correctly considered evidence of alter ego factors and correctly found Orient Spirit introduced evidence to:

> support an inference that the two entities have an alter ego relationship – e.g., ANL Singapore is a wholly owned subsidiary of ANL Container, they share two directors/officers, ANL Container's Financial Report 2012 reflects that ANL Container consolidates the accounts of ANL Singapore and its other subsidiaries, ANL Singapore does not have its own website and is listed as a regional office on ANL Container's website, ANL Singapore paid for fuel on the Kokoda which was chartered by ANL Container, fuel invoices for the Winter D – which assertedly was chartered by ANL Singapore – bear ANL Container's name, and ANL Container's publicly available vessel schedule lists the Winter D as being part of ANL Container's fleet. [Dkt. # 20, 1-10.]

ANL Singapore's evidence to the contrary, which the Magistrate Judge found carried the clear weight of the evidence, was largely in the form of a self-

serving declaration of its managing director stating that ANL Singapore observes corporate formalities and separateness [Dkt. # 44, 20:12-20] (contrary to evidence introduced by Orient Spirit) and that it is adequately capitalized "in the amount of Singapore $200,000 (the equivalent of over U.S. $150,000) – an amount which he believes to be adequate" [Dkt. # 44, 21:21-23] (but which seems to be lacking any credibility in the context of the purchase costs of the bunkers being in excess of millions of dollars [*see, e.g.*, Dkt. # 19-1, p. 55] and the daily hire rate of M/V WINTER D of over $8,000 [Dkt. # 19-1, p. 3]). The other evidence relied upon by the Magistrate Judge was "the documentation reflecting that ANL Singapore paid for the Winter D fuel bunkers" which, as addressed above, is subject to dispute and, even if true, does not preclude the possibility that ANL Singapore paid for the bunkers on behalf of ANL-CL, something it had done at least six times in the past. This evidence should not defeat the inference that ANL-CL and ANL Singapore are alter egos such that there is no fair and reasonable probability Orient Spirit will prevail on the alter ego issue.

At the very least, the serious doubts about: (1) the credibility of ANL Singapore's evidence; (2) the suspicious manner in which it was produced (or not produced with regard to the clean fixture recap); and (3) the self-serving attestations of its managing director, warrant limited jurisdictional discovery. Courts routinely allow jurisdictional discovery on facts far less persuasive than those introduced by Orient Spirit as to ANL-CL's interest in the bunkers and an alter ego relationship with ANL Singapore. In denying Orient Spirit's request for jurisdictional discovery, the Report and Recommendation states only: "this is not a case in which further discovery might demonstrate facts sufficient to show a basis for jurisdiction" [Dkt. # 44, 22:1-3], without any explanation. Orient Spirit contends the Magistrate Judge abused her discretion in denying an opportunity for discovery where Orient Spirit's evidence raises inferences to

support the attachment, ANL Singapore's evidence is hotly contested, and more facts are needed before this Court can decide whether to vacate the attachment.

For instance, Orient Spirit should be able to propound a request to produce the clean fixture recap which could indicate ANL-CL is, indeed, the charterer of M/V WINTER D, as Orient Spirit contends. Without the ability to compel discovery, Orient Spirit (and this Court) are limited to ANL Singapore's piecemeal and voluntary production of only those facts which purportedly support its position. Orient Spirit should also have an opportunity to cross-examine ANL Signapore's managing director, Yeo Hock Yong, whose untested attestations were heavily weighed by the Magistrate Judge in recommending the attachment be vacated. Based on its prior dealings with ANL-CL and ANL Singapore and publicly available information, Orient Spirit was able to raise substantial inferences as to ownership of the bunkers and an alter ego relationship and is not engaging in a "fishing expedition." It should therefore be entitled to discover those facts withheld by ANL Singapore so that this Court can decide this matter based upon a complete record.

## II. ARGUMENT

### A. THE REPORT AND RECOMMENDATION IS SUBJECT TO *DE NOVO* REVIEW

In deciding what standard of review should apply to a recommendation of a Magistrate Judge, district courts look to FED. R. CIV. P. 72. Motions that are "dispositive," *i.e.,* those that extinguish a claim or defense of a party, should be reviewed *de novo* under FED. R. CIV. P. 72(b). Additionally, as provided for in 28 U.S.C. § 636(b)(1)(C), "a judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations [made by the Magistrate Judge] to which objection is made." Magistrate Judge Chooljian's Report and Recommendation, recommending the maritime attachment be vacated and directing the release of the bond, has the

effect of divesting the Court of its jurisdiction over the matter, effectively requiring a dismissal of the action pursuant to FED. R. CIV. P. 12(b)(2). This type of motion has an identical effect as the dispositive motions referenced in 28 U.S.C. § 636(b)(1). *See, Deiulemar Compagnia Di Navigazione SpA v. Dabkomar Bulk Carriers Ltd.*, 2006 WL 317241, at *5 (S.D.N.Y. Feb. 10, 2006)("The Court 'shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations [relating to Defendants' motion to vacate the Rule B attachment and dismiss the Amended Complaint] to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.[']") Accordingly, Magistrate Judge Chooljian's Report and Recommendation is "dispositive" within the meaning of FED. R. CIV. P. 72 and must be reviewed *de novo*.

### B. ORIENT SPIRIT SATISFIED ITS MINIMAL PROBABLE CAUSE BURDEN AT THE RULE E(4)(F) STAGE TO SUSTAIN THE RULE B ATTACHMENT

#### 1. Orient Spirit's Burden Is to Evidence Reasonable Grounds to Sustain the Attachment

The proper standard that governs a Court's decision in reviewing an order of attachment at a Rule E(4)(f) hearing, where a defendant seeks to vacate the order of attachment, is as follows:

> Under Rule B of the Supplemental Admiralty Rules, Plaintiff may attach a defendant's property if four conditions are met. (1) Plaintiff has a valid *prima facie* admiralty claim against the defendant; (2) defendant cannot be found within the district; (3) property of the defendant may be found within the district; and (4) there is no statutory or maritime law bar to the attachment.

*See, Equatorial Marine Fuel Mgmt. Servs. PTE v. MISC Berhad*, 591 F.3d 1208

(9th Cir. 2010)(*citing Aqua Stoli Shipping, Ltd.,* 460 F.3d at 474 (2d Cir. 2006)). It is well-settled that maritime plaintiffs are "not required to prove their case" at a Rule E(4)(f) hearing. *T&O Shipping, Ltd. v. Source Link Co., Ltd.*, 2006 WL 3513638 (S.D.N.Y. Dec. 5, 2006; *see also, Totalmar Navigation Corp. v. ATN Industries, Inc.*, 2008 WL 5111316, at *4 (S.D.N.Y. Dec. 3, 2008) ("[I]n ruling on a motion for *vacatur* [of a maritime attachment] the district court should not conduct a full-fledged inquiry into the merits of the plaintiff's claim.") Rather, plaintiff need only demonstrate reasonable grounds for the attachment. The purpose of a Rule E(4)(f) hearing is "not to resolve definitively the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant." *Del Mar Seafoods Inc. v. Cohen*, 2007 WL 2385114, at *3 (N.D. Cal. Aug. 17, 2007)(internal quotations and citations omitted); *see also, Sea Prestigio, LLC v. M/Y Triton*, 2010 WL 5376255, at *1 (S.D. Cal. Dec. 22, 2010); *OS Shipping Co. Ltd. v. Global Maritime Trust(s) Private Ltd.*, 2011 WL 1750449, at *5 (D. Or. May 6, 2011).

### 2. The Evidence that ANL-CL Has an Independent Attachable Interest in the Bunkers Is Sufficient to Sustain the Attachment

Orient Spirit presented *undisputed* and *independent* evidence that ANL-CL has an attachable interest in M/V WINTER D bunkers, as acknowledged by the Magistrate Judge, including: (1) ANL-CL's publicly available vessel schedule listing M/V WINTER D as part of ANL-CL's fleet [Dkt. # 23-1, Picciurro Decl., ¶ 13; Dkt. # 23-3, Ex. 13, pp. 30-32]; (2) an August 28, 2013 news article from Lloyd's List Australia which reported that ANL-CL would be using M/V WINTER D as a replacement vessel in connection with its West Coast service [Dkt. # 23-1, Picciurro Decl., ¶ 14; Dkt. # 23-3, Ex. 14, pp. 33-34]; and (3) crucially, the fact that a fuel provider invoiced ANL-CL for M/V WINTER D fuel and that other fuel invoices refer to "ANL" but never "ANL Singapore"

Kaye, Rose & Partners LLP

[Dkt. # 19-1, p. F-68]. The Magistrate Judge correctly found this evidence supported an inference that ANL-CL had an attachable interest in the bunkers. The fact that ANL-CL's name is on a bunker invoice is crucial because, even if ANL Singapore paid for the bunkers on behalf of ANL-CL, ANL-CL has an attachable interest in the bunkers. *See, World Fuel Servs. v. SE Shipping Lines PTE, Ltd.*, 2011 WL 446653 (E.D. La. Feb. 4, 2011) (upholding the lower court's ruling that a right to possession constituted an attachable, legal interest in the bunkers).

The evidence introduced by ANL Singapore was insufficient to defeat this presumption and was erroneously heavily weighed to support a finding that the attachment should be vacated. ANL Singapore introduced a Charterparty (lease form for the Vessel) which ostensibly shows ANL Singapore as the charterer, but: (1) it is suspiciously dated months after the Vessel delivery; (2) it indicates the Vessel was delivered in Korea, despite the undisputed admission by ANL Singapore that the Vessel was not in Korea at any material time; (3) ANL Singapore's counsel was unable to produce a copy of the Charterparty shortly after the attachment due to a public holiday in Australia (where ANL-CL is located, but which should not have affected ANL Singapore's ability to produce same); and (4) despite ANL Singapore's counsel's inadmissible hearsay statement at the hearing (which was cited in the Report and Recommendation and seemingly considered by the Magistrate Judge for the truth of the matter asserted) that the clean fixture recap - a contemporaneous confirmation of the charter agreement which includes the identity of the parties thereto - shows ANL Singapore as the charterer, ANL Singapore has suspiciously and inexplicably refused to produce this document despite numerous requests by Orient Spirit. At a minimum, the contents of the Charterparty and the circumstances surrounding its production raise fair and reasonable doubts as to its accuracy and authenticity, such that it should not be weighed more heavily than Orient Spirit's undisputed

evidence to the contrary.

ANL Singapore's remaining evidence which the Magistrate Judge weighed heavily is similarly insufficient to defeat the inference that ANL-CL had an attachable interest in the bunkers. ANL Singapore's evidence that it paid for the bunkers (which were invoiced to either ANL-CL or ANL and not to it) and the charter hire of M/V WINTER D is not persuasive in light of other undisputed evidence introduced by Orient Spirit that ANL Singapore has paid for expenses of ANL-CL in the past (including at least six charter hire payments for another vessel chartered by ANL-CL which is the subject of the underlying arbitration.) ANL Singapore's self-serving declaration should similarly not be held sufficient to overcome the inference based on undisputed evidence that ANL-CL has an attachable interest in the bunkers. "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

### 3. The Evidence of Alter Ego Is Sufficient to Sustain the Attachment

The Magistrate Judge correctly held in her Report and Recommendation that courts can consider allegations and evidence not before it at the time of the original attachment, including alter ego allegations asserted in Orient Spirit's amended complaint. *See, e.g., Cockett Marine Oil Ltd. v. M/V LION*, 2011 WL 1833286, at *2, *5 & nn. 2-3 (E.D. La. May 12, 2011); *Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006); and *Essar International Ltd. v. Martrade Gulf Logistics, FZCO*, 2007 WL 2456629, at *3 (S.D.N.Y. Aug. 23, 2007). However, Orient Spirit respectfully submits that the Magistrate Judge improperly weighed ANL Singapore's disputed and self-serving evidence more heavily than Orient Spirit's undisputed and independent evidence in finding Orient Spirit did not show a fair and reasonable probability that it would prevail.

9

Orient Spirit's Objections to Magistrate Judge  
Chooljian's Report and Recommendation

Case No.  
CV-14-0572 PA

Federal courts sitting in admiralty generally apply federal common law when examining corporate identity. *Chan v. Society Expeditions*, 123 F.3d 1287, 1294 (9th Cir. 1997). Among the factors that courts evaluate when conducting an alter ego analysis are the following: overlap in ownership, officers, directors, and personnel; intermingling of property between the entities; whether the dealings between the entities are at arm's length; inadequate capitalization; and disregard of corporate formalities. *See, MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (citing *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997); *see also, Oxford Capital Corp. v. U.S.A.*, 211 F.3d 280, 284(5th Cir. 2000.[3]

The case law is clear that there is no mechanistic formula which applies to the alter ego analysis, and there are no minimum numbers of factors that must be satisfied. *United States* v. *Standard Beauty Supply Stores, Inc.*, 561 F.2d 774, 777 (9th Cir. 1977) ("Issues of *alter ego* do not lend themselves to strict rules and *prima facie* cases. Whether the corporate veil should be pierced depends on the innumerable individual equities of each case. 'Only general rules may be laid down for guidance.'"); *KPI Bridge Oil Sing. PTE Ltd.* v. *Berlian Laju Tanker*

---

[3] Similarly, the Fifth Circuit has established the following factors to be weighed by its courts: "(1) the parent and subsidiary have common stock ownership; (2) the parent and subsidiary have common directors or officers; (3) the parent and subsidiary have common business departments; (4) the parent and subsidiary file consolidated financial statements; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operated with grossly inadequate capital; (8) the parent pays salaries and other expenses of subsidiary; (9) the subsidiary receives no business except that given by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; (12) the subsidiary does not observe corporate formalities." *Bridas S.A.P.I.C. v. Government a/Turkmenistan,* 447 F.3d 415, 418 (5th Cir. 2006). The court then referenced three more private law factors: "(1) whether the directors of the 'subsidiary' act in the primary and independent interest of the 'parent'; (2) whether others pay or guarantee debts of the dominated corporation; and (3) whether the alleged dominator deals with the dominated corporation at arm's length." *Id.* (internal quotations and citations omitted).

Kaye, Rose & Partners LLP

*TBK PT,* 2012 U.S. Dist. LEXIS 37751 (N.D. Cal. Mar. 20, 2012) ("Our court of appeals has not set out which factors must be present to warrant piercing the corporate veil").

Several decisions in the context of maritime attachment and garnishment under Rule B hold that overlapping ownership, officers, directors, and personnel are *significant* factors to be taken into account in undertaking a corporate veil piercing enquiry. *See, e.g., Budisukma Permai Sdn* v. *NMK. Products & Agencies,* 606 F. Supp. 2d 391, 399 (S.D.N.Y. 2009) ( alter ego defendants closely owned and directed by the same group of people); *Classic Maritime Inc.* v. *Limbungan Makmur Sdn Bhd,* 646 F. Supp. 2d 364, 370-371 (S.D.N.Y. 2009) (overlap in officers and directors). In *C. Transport Panamax, Ltd. v. Kremikovtzi Trade E.O.O.D.*, 2008 WL 2546180 (S.D.N.Y. 2008), the court found the amended complaint sufficiently alleged alter ego liability by claiming: complete ownership of one defendant by the other; shared directors and officers; and payment by one defendant on the other defendant's behalf. *Id.* at *4. *See also, Classic Maritime Inc. v. Limbungan Makmur SDN BHD*, 646 F. Supp. 2d 364, 371 (S.D.N.Y. 2009.

Here, Orient Spirit has met and exceeded the "reasonable grounds" standard in showing the attachment is proper even if ANL Singapore's claim to ownership of the bunkers is true because of the abundance of evidence that ANL-CL and ANL Singapore are alter egos.  ANL Singapore is a wholly owned subsidiary of ANL-CL.  [Dkt. # 23-1, ¶ 11; Dkt. # 23-3, Ex. 11, pp. 14-18.]  ANL-CL's Director, John Ernest Lines, and Secretary, Kamlesh Devchand, are both directors of ANL Singapore, evidencing ANL-CL's control over (or at a minimum, opportunity to control) ANL Singapore.  [Dkt. # 23-1, ¶¶ 11 and 12; Dkt. # 23-3, Exs. 11 and 12, pp. 14-29.]  ANL Singapore has made at least six, separate payments for the charter hire of M/V ANL KOKODA on behalf of ANL-CL during the charter of ANL KOKODA, and there is evidence ANL

Singapore paid for M/V WINTER D bunkers on behalf of ANL-CL in this matter, all of which show a disregard of corporate formalities and intermingling of accounts, contrary to ANL Singapore's self-serving declaration. [Dkt. # 23-5, ¶ 5; Dkt. # 23-6, Ex. 2, pp. 2-19; and Dkt. # 19-1, p. F-68.]   ANL-CL requested that M/V ANL KOKODA Charterparty be novated to ANL Singapore to accommodate ANL-CL's larger "vessel Operations structure" [Dkt. # 23-5, ¶ 4], evidencing ANL-CL's domination over its subsidiary. Further, ANL-CL holds M/V WINTER D out as part of its own fleet, and advised that it was replacing one of its other vessels for U.S. West Coast service.  [Dkt. # 23-1, ¶¶ 13 and 14; Dkt. # 23-3, Exs.13 and 14, pp. 30-34.]   ANL Singapore does not have its own website; instead, searching for "ANL Singapore" on the Internet leads one to the website for ANL-CL (www.anl.com.au), which lists ANL Singapore as its "Regional Office" [Dkt. # 23-1, ¶ 15; Dkt. # 23-3, Ex. 15, p. 35]; this evidences both ANL entities operate as a single, economic enterprise.   ANL-CL consolidates ANL Singapore's financial statements.  [Dkt. # 23-1,  ¶ 16; Dkt. # 23-4, Ex.16.]   All of these facts support, at a minimum, "reasonable grounds" and/or "probable cause" that ANL-CL and ANL Singapore do not observe corporate formalities and ANL-CL dominates ANL Singapore.   This, in conjunction with the obvious control ANL-CL asserts over ANL Singapore (as evidenced by its control over documents produced in this case), supports more than a *prima facie* case of an alter ego relationship, such that the sole basis for ANL Singapore's Motion to Vacate Attachment (*i.e.*, that ANL Singapore owns the bunkers) fails.

The evidence presented by ANL Singapore allegedly showing the lack of an alter ego relationship, which the Magistrate Judge determined weighed against inferences of an alter ego relationship made by Orient Spirit, is insufficient to overcome Orient Spirit's showing.  The crux of the evidence was based upon a self-serving declaration of ANL Singapore's managing director,

stating in part that ANL Singapore observes corporate formalities (*e.g.*, holding board meetings) and separateness. [Dkt. # 44; 20:12-20.] These attestations, which Orient Spirit had no opportunity to test in discovery, should not be weighed so heavily as to overcome the inferences based on the independent and undisputed evidence introduced by Orient Spirit. Additionally, the documentation which purportedly reflects that ANL Singapore paid for the Vessel's fuel bunkers is subject to dispute and, taken at face value, does not foreclose the very real possibility that ANL Singapore paid for the bunkers on behalf of ANL-CL as it has done in the past. ANL Singapore's self-serving evidence should carry less weight than the undisputed evidence presented by Orient Spirit, such as the lack of ANL Singapore's own website, the sharing of officers and directors, and ANL Singapore's previous payments on behalf of ANL-CL.

### C. AT A MINIMUM, ORIENT SPIRIT SHOULD BE AFFORDED AN OPPORTUNITY TO CONDUCT DISCOVERY INTO ITS ALTER EGO CLAIMS

The Magistrate Judge abused her discretion in denying Orient Spirit's request for jurisdictional discovery. "Discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)(internal citation omitted). "Although a refusal to grant discovery to establish jurisdiction is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction, discovery should be granted when, as here, the jurisdictional facts are contested or more facts are needed." *Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)(internal citation and quotation marks omitted). As demonstrated above, Orient Spirit has introduced undisputed, independent evidence raising inferences

of both direct ownership of and/or an attachable interest in the bunkers by ANL-CL as well as an alter ego relationship between ANL-CL and ANL Singapore. The Report and Recommendation simply states, "this is not a case in which further discovery might demonstrate facts sufficient to show a basis for jurisdiction." [Dkt. # 44, 22:1-3.] However, the Report and Recommendation does not explain why discovery would not uncover such facts. Given the nature of ANL Singapore's self-serving evidence and the suspicious, piecemeal production of only information helpful to it, this case is one in which the evidence is both hotly contested *and* more facts are needed.

For instance, during the hearing on ANL Singapore's Motion to Vacate, ANL Singapore's counsel's statement that the clean fixture recap reflects ANL Singapore as the charterer (while inadmissible hearsay) begs the question of why the clean fixture recap was not produced if it is readily available. One would reasonably expect ANL Singapore to produce the 'clean fixture recap' if for no other reason than the fact that Orient Spirit hotly contests the genuineness and credibility of the Charterparty itself. Allowing Orient Spirit to request, and if necessary compel, production of this document could result in additional proof that ANL-CL is the charterer and the Charterparty's reference to ANL Singapore, like other material terms in the Charterparty, was also erroneous. Simply put, more facts are needed.

Courts routinely grant discovery into alter ego allegations under similar circumstances. For instance, in *Naftomar Shipping and Trading Co. Ltd. v. KMA International S.A.*, 2011 WL 888951 (S.D. Tex. Mar. 10, 2011), the plaintiffs offered evidence that alleged alter ego defendants shared common offices, an overlapping director, officer, manager and shareholder, and that they were operated as a single economic enterprise. The court determined that the plaintiffs pled sufficient facts and offered sufficient evidence to support their alter ego allegations, denied defendant's motion to vacate, and granted plaintiffs the

14

opportunity to conduct discovery.  *Id.*

Similarly, in *Rea Navigation, Inc v. World Wide Shipping Ltd.*, 2010 AMC 221 (S.D.N.Y. 2009), the court held that plaintiffs pled sufficient facts to sustain the attachment (where plaintiffs alleged that the purported alter ego shared an address, phone number, contact information, and staff with the defendant, and made payments on behalf of the defendant), and allowed for limited discovery on the alter ego issue "in order to ensure that the Alter Ego Defendants' funds are not attached longer than necessary."  *See also, Resource Marine PTE, Ltd. v. Solym Carriers (London) Ltd.*, 2012 WL 6628966, at *3 (E.D. Cal. Dec. 19, 2012) (permitting jurisdictional discovery on alter ego allegations prior to determining motion to vacate); *KPI Bridge Oil Sing. PTE Ltd. v. Berlin Laju Tanker TBK PT*, 2012 U.S. Dist. LEXIS 37751, at *5 (N.D. Cal. 2012)(ordering jurisdictional discovery regarding alter ego allegations prior to releasing security); *Maryland Tuna Corp. v. MS Benares*, 429 F.2d 307, 322 (2d Cir. 1970) (permitting discovery in respect to allegation that assets owned by one corporation should in fact be considered an asset of a related corporation); *Hawknet Ltd. v. Overseas Shipping Agencies*, 2008 WL 1944817, at *5 (S.D.N.Y. Apr. 29, 2008) (finding that plaintiff "ha[d] sufficiently alleged alter ego status," but that additional discovery was required in order for plaintiff "to prove, or not, the alter ego relationship [alleged].")

Courts in this Circuit have also allowed for limited discovery relating to alter ego allegations.  In *Twentieth Century Fox Int'l Corp. v. Scriba*, 385 Fed. Appx. 651 (9th Cir. 2010), the Ninth Circuit held that discovery limited to specific alter ego issues was appropriate, and determined that the district court erred in granting the motion to dismiss and ruling on an incomplete record. Prevailing Ninth Circuit law provides that the party seeking discovery "bears the burden of showing that the denial of discovery results in actual and substantial prejudice to it."  *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).  In

*Twentieth Century Fox*, the Ninth Circuit focused on the following two points in concluding that plaintiff sufficiently demonstrated that the denial of discovery would result in prejudice: (1) plaintiff's representations of the discovery sought was specific; and (2) plaintiff's allegations, if supported by evidence, would "provide a strong argument for the exercise of jurisdiction over [the alleged alter ego]." *Twentieth Century, supra,* at 653.

In *Kite Shipping LLC v. San Juan Nav. Corp.*, 2012 WL 4049936 (S.D. Cal. Sept. 13, 2012)*,* now-Chief Judge Barry T. Moskowitz allowed jurisdictional discovery on alter ego issues on facts far less compelling than those presented here. In *Kite*, there was no overlap in officers or directors between the two alleged alter egos and no consolidation of finances. The only evidence of alter ego relationship supporting jurisdictional discovery was a disputed website statement that the two alleged alter egos were joint venturers (which, by its very definition, indicates two separate companies acting in a joint fashion and not an alter ego situation). *A fortiori*, Orient Spirit should be able to conduct discovery in this matter to further support its alter ego allegations, having already established an inference far beyond that in the *Kite* matter, and it was an abuse of discretion to deny same.

### III. CONCLUSION

Wherefore, Orient Spirit respectfully requests ANL-Singapore's Motion to Vacate be denied or Orient Spirit be allowed an opportunity to conduct limited discovery into the issues of bunker ownership and the alter ego relationship of ANL-CL and ANL Singapore.

Dated: August 7, 2014　　　　　　　　**KAYE, ROSE & PARTNERS, LLP**

　　　　　　　　　　　　　　　　　　By: /s/ André M. Picciurro
　　　　　　　　　　　　　　　　　　　　Bradley M. Rose
　　　　　　　　　　　　　　　　　　　　André M. Picciurro
　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　　ORIENT SPIRIT NAVIGATION LIMITED